## Case No. 2,639.

### The CHEROKEE.

[12 N. Y. Leg. Obs. 33.]

District Court, S. D. New York. Dec., 1353.

REMOVING TIMBER FROM PUBLIC LANDS—FORFEITURE OF VESSEL—PLEADING AND PROOF.

1. Forfeiture cannot be enforced [against a vessel, the master of which has taken on board timber removed from public lands, in violation of act of March 2, 1831 (4 Stat. 472)], except upon averment in the libel, and proof that the acts charged as a public offense were done by the master of the vessel wilfully, or with knowledge of their culpability.

2. That the confessions of the consignee of the vessel of his knowledge in the premises are not admissible to charge the offense on the owner or mate of the vessel.

3. That if such proofs could be received, it was less doubtful upon the evidence whether the portions of land upon which the timber was cut, at the time belonged to the United States, and if they did do so, whether the consignee cut or removed the same thereupon, or acquired it knowing that fact.

Charles O'Conor, Dist. Atty., for the United States.

George F. Betts, for the schooner.

BETTS, District Judge. This is a libel of information, demanding the forfeiture of the schooner for removing timber from the public lands in Florida, contrary to the prohibitions of the act of congress of March 2, 1831 (4 Stat. 472, §§ 1, 2). The first section of the act imposes a fine and imprisonment on any persons committing the offenses therein declared "on any lands of the United States, which in pursuance of any law passed, or hereafter to be passed, shall have been reserved or purchased for the use of the United States, for supplying or furnishing therefrom timber for the navy of the United States or from any other lands from the United States acquired, or hereafter to be acquired," with-

out being authorized by order in writing by a competent officer and for the use of the United States. The second section supplies the immediate foundation of this prosecution. It enacts, "that if the master, owner, or consignee of any ship or vessel shall knowingly take on board any timber cut on lands which have been reserved or purchased as aforesaid, without proper authority, and for the use of the navy of the United States, or shall take on board any live oak or red cedar timber cut on any other lands of the United States, or to export the same to any foreign country, the ship or vessel on board which the same shall be taken, transported or seized, shall with her tackle, apparel and furniture be wholly forfeited to the United States, and the captain or master of such vessel, wherein the same shall have been exported to any foreign country against the provisions of this act, shall forfeit and pay to the United States a sum not exceeding $1,000."

The libel consists of six counts. In the first, the cause of forfeiture is, that the master of the Cherokee knowingly took on board her without proper authority, on St. John's river, East Florida, on the 20th of June, 1851, a quantity of red cedar timber which had been cut on public lands of the United States in East Florida, reserved for supplying timber for the use of the navy, which timber had not been cut for the use of the navy, and that the same was taken on board by him with intent to transport it to New York. The second count is the same as the first, except that it does not charge that the master did the act knowingly. The third count varies from the second in averring that the master took the timber on board "with intent to export, dispose of, use or employ the same in a manner other than for the use of the navy of the United States, and in omitting the allegation that the timber was cut or taken from the land reserved," etc. The fourth, fifth and sixth counts are substantially the same with the first; the sixth averring, in addition, that the schooner sailed from Florida with the timber, and arrived with it on the 1st of July, 1851, in this port. The answer is interposed by the owners, and denies the liability of the vessel to forfeiture for the cause alleged, being in effect tantamount to a demurrer. A commission was executed in Florida and the testimony of witnesses taken under it on the part of the United States. The claimant examined the master before a commissioner out of court.

The libel does not designate the locus in quo by any more specific description than that it was some point on the St. John's river in East Florida, to the plaintiffs unknown; and it is urged that they make sufficient title to the premises under the treaty of cession by Spain of February 22, 1819 (8 Stat. 254, art. 2). But the cession is qualified upon its face. It cedes "all public lots and squares, vacant lands, public edifices, fortifications, barracks and other buildings, which are not private prop-

erty." And affords full proof that the territories were occupied by a resident population, and also that grants of lands, of indefinite location and extent, had been previously made by Spain. Arts. 6 and 8. All rights of private property remained unaffected by the treaty.

The legislation of congress, and the adjudications of the United States courts from the period of cession to the present time, are judicial notice in this cause, that the United States did not become proprietors of the whole of Florida by the cession; on the contrary, that very large portions of both territories have been always claimed and occupied as private property, under title paramount to that of this government. It is, accordingly, necessary for the plaintiffs to prove that the premises from which the timber in question was cut or taken, were at the time public property.

The plaintiffs, on the hearing, and by their proofs, allege that the timber in question was taken from sections 31 and 32 of township 10 south, range 24 east. The only evidence offered to the fact is, that these lands were surveyed by the United States surveyor, and have been recently watched, occasionally, by their timber agents, to prevent trespasses, and that on the 11th of June, 1851, entries were made by an individual, of parts of two lots in each of these sections. The further proof that it is generally understood in that region of country that the United States own lands adjacent to the St. John's river or its tributaries, is too loose and indefinite to aid a claim to these particular lots.

No legal evidence, affecting the owners of the vessel is given, that the timber transported by her was taken from either of these lots. Indeed, there is no proof whatever to that fact, other than the declaration of one J. W. Pearson. It is unnecessary to criticise the version of these declarations given by different witnesses, because I hold them inadmissible to create a forfeiture of the vessel as against the interests of other parties. The vessel went out from a port in New Jersey, under a charter from the master to a Mr. Grier, and was by him consigned to Pearson to load her with a cargo of timber. The charterer accompanied the vessel. Pearson was no way the agent of the master or owners in loading the schooner. He, on his own account, supplied the timber to the charterer, without other interference by the master than his repeated warning not to put any United States timber on board. The charter contained the usual qualifications to the engagement to take a full lading, and that it should be lawful cargo. Pearson was not the agent of the owners, nor was he authorized to bind them or the vessel by his declarations or admissions. The general principle is, that the admissions of agents affect even their direct principal only when made during his continuance of the agency in regard to a transaction then depending, "et dum feret opus." 1

Greenl. Ev. (6th Ed.) § 113, and notes; Rouse, Cr. Ev. 54. Under this doctrine the declarations or admissions of the charterer himself that he received on board an unlawful cargo knowingly would not be permitted to implicate the vessel or her owners in an illicit transaction, because he had no direct or implied authority so to employ the vessel.

In this case the offense charged in the libel is, that the master committed the unlawful act, and the proof offered to support the charge is the admission of an agent of the charterer. The statute subjects a vessel to forfeiture by acts committed by her consignee; but it is doubtful if in such cases, the corpus delicti could be proved, by his declarations or confessions alone. Rouse, Cr. Ev. 37. The testimony is direct and positive that the master forbade any United States timber being laden on board, and was assured by the consignees that none of this cargo came from the public lands. I think, on these points, the defense to the libel is complete. But further, supposing the timber in question was taken from the public lands without proper authority, and that the consignee, knowing the fact, loaded it on board the vessel, and that such a transaction might subject the vessel to forfeiture, this libel is not so framed as to entitle the plaintiffs to that decree upon its allegation. The rules of pleading require libels for forfeitures to set forth distinctly the ground and causes upon which a forfeiture is demanded, and they must bring by plain averments the supposed offense within the provisions of the statute on which the action is founded. Sup. Ct. Rules Adm. 22; The Merino, 9 Wheat. [22 U. S.] 401; The Palmyra, 12 Wheat. [25 U. S.] 18.

The allegation is, that the offense was committed by the master, whilst the proof goes no further than to implicate the consignee in acts which would legally forfeit the vessel,—for, in my judgment the second and third counts or allegation of the libel are not within the provisions of the statute, and no decree of condemnation can be rendered on them if fully proved. These counts assume, that the offense is committed by the act of taking the timber on board and transporting it to New York, although the master was ignorant that it had been taken from public lands. I do not accede to this interpretation of the statute. The second section of the act creates two classes of offenses. The first is transporting any timber cut on the lands of the United States reserved for the use of the navy; and the other, transporting any live oak or red cedar timber, cut on any other lands of the United States. These two clauses of the sections are separated in punctuation by a semicolon: the term "knowingly" is prefixed to the first branch, and is not repeated in the second. The argument on the part of the United States is, that the offense under the second clause is consummated by the commission

of the prohibited act, without regard to the scienter of the accused party. It seems to me, this construction of the law is not sanctioned by the arrangement and connection of the two sentences, nor by their general design and purport. In the first instance, where it is admitted, a scienter must be charged in the libel and proved on trial, in order to establish an offense; the prohibited act embraces live oak and red cedar equally with the other clause, for it interdicts cutting and carrying away any timber; and as it relates to lands reserved by the United States for the use of the navy, would seen much more to justify an implied notice or knowledge, in the whole community of the United States title, from the fact of such reservation for public use, than in the second instance, where no specific act need be done by the United States, beyond accepting the cession of the lands, in order to bring the lands within the protection of this statute. It must, accordingly, be far less likely that the community, as matter of fact, is apprised that sections 31 and 32 in this case, not reserved, belonged to the United States, than if they had been surveyed, reserved and set apart for the use of the navy. On this state of the facts there is a strong improbability that congress would impose the penalty of forfeiture of vessels engaged in carrying away timber which had been cut on the lands generally and unreserved, without any knowledge of or notice to, the owner, master, or consignee of the vessel, and would forbear to inflict the same penalty for the offense on lands reserved for the use of the navy, unless it be averred and proved that the owner, master or consignee of the vessel knew that the timber came from those lands, and had been obtained without proper authority. The reason of the case stands strongly opposed to such an interpretation of the law. Besides, the arrangement of the two clauses and the rules of syntax would naturally carry the qualification of "knowingly," from the first paragraph to the second, particularly considering that a common penalty was imposed in both, and in the second instance for acts committed anywhere within the two territories and irrespective of any reservation or special appropriation of the lands.

It appears to me that the government in taking to itself a protection for its lands within these territories against trespasses, higher and different from what at that day it enjoyed elsewhere in the United States, intended to exact these extreme penalties only in case of wilful depredations upon the public property; and that the forfeiture of a vessel employed in transporting timber cut on lands of the United States, cannot be enforced without proof that the wrong was done knowingly.

The libel in this case must be dismissed. First. Because the action cannot be sustained except upon the averment and proof that the acts charged as a public offense, were done by the master wilfully or with knowledge of their culpability. Second. Because the confessions of the consignee of the vessel of his own knowledge in the premises, are not admissible to charge the offense on the owner or master of the vessel. Third. Because, if such proofs could be received, it is left doubtful upon the evidence whether the portions of lots No. 31 and 32, on which the timber in question was cut, at the time belonged to the United States, and if they did so, whether Pearson, the consignee, cut or removed the timber therefrom or acquired it knowing that fact.